UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUOMEN COLORIZE OY,

      Plaintiff,
v.                              Case No: 8:10-cv-2406-T-33MAP

DISH NETWORK L.L.C.,
ECHOSTAR SATELLITE, L.L.C.,
DISH NETWORK CORPORATION,
ECHOSTAR CORPORATION, and
ECHOSTAR TECHNOLOGIES, L.L.C.,

      Defendants.
_____/

## ORDER

This cause comes before the Court pursuant to Defendant DISH Network L.L.C.'s Motion to Transfer to the District of Colorado Pursuant to 28 U.S.C. § 1404(a), filed on January 24, 2011. (Doc. # 15). Plaintiff Suomen Colorize Oy filed a Response in Opposition to the Motion to Transfer on March 7, 2011 (Doc. # 21), and DISH Network L.L.C. filed a Reply Memorandum (Doc. # 26) on March 22, 2011.

In addition, on March 22, 2011, Defendants EchoStar Satellite L.L.C., Dish Network Corporation, EchoStar Corporation, and EchoStar Technologies L.L.C. filed a Motion to Join in DISH's Motion to Transfer. (Doc. # 27). Suomen filed a Response in Opposition to the Motion for Joinder on April 5, 2011. (Doc. # 36). Upon due

consideration and for the reasons that follow, the Motion to Transfer and the Motion for Joinder in the Motion to Transfer are granted.[1]

## I. Background

Suomen, a Finnish corporation with its principal place of business in Finland, initiated this patent infringement action on October 26, 2010, and filed an amended complaint on March 7, 2011. (Doc. # 19 at ¶ 1). Suomen alleges that Defendants "have infringed, actively induced others to infringe, and/or contributorily infringed United States Letters Patent No. 7,277,398." Id. at 17. The '398 Patent is entitled "method and terminal for providing services in telecommunication network." Id. at ¶ 42. Suomen is the owner of the '398 Patent by assignment. Id. According to Suomen:

> The '398 Patent describes a method and a system for using a terminal and one or more telecommunications networks for providing services, wherein the selection data of a service is formed by using identification and control data of the services that is located in multiplexed frames used for transmitting

---

[1] The Court finds that allowing the other Defendants to join in the Motion to Transfer streamlines the process and prevents the filing of unnecessarily duplicative motions on the docket. Therefore, Defendants' Motion to Join in the filing of the Motion to Transfer (Doc. # 27) is granted.

>     the services to subscribers over the one or
>     more telecommunications networks; and the
>     method is tied to a particular machine, the
>     terminal, which is used for displaying the
>     selection data for the subscriber to select
>     services provided over the one or more
>     telecommunications networks.

Id. at ¶ 44.

Suomen alleges that "Dish Network has infringed and continues to infringe one or more claims of the '398 Patent by providing its Dish Services to 14 million subscribers nationwide, making, using, selling or offering for sale the Dish Services." Id. at ¶ 59.

Arguing that Colorado, rather than Florida, is the center of gravity for this patent infringement action, Defendants seek an order transferring this case to the District of Colorado. (Doc. # 15). In support of their Motion to Transfer and Reply Memorandum, Defendants filed multiple detailed declarations. Suomen, on the other hand, filed several corporate documents and the affidavit of its counsel in support of its opposition to the Motion to Transfer. (Doc. # 21-1).

## II. Legal Standard

In patent cases, the law of the Federal Circuit governs. In re TS Tech. United States Corp., 551 F.3d 1315, 1320 (Fed. Cir. 2008). The Federal Circuit explains that

"[i]n reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a), we apply the law of the regional circuit." In re Nissim Corp., 316 F. App'x. 991, 992 (Fed. Cir. 2008).

In evaluating a motion to transfer, this Court first turns its attention to 28 U.S.C. § 1404(a), which states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As explained in Van Dusen v. Barrack, 376 U.S. 612, 616 (1964), "The purpose of the section is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." (internal quotations and citations omitted). Furthermore, the Court has noted that "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (internal quotations and citations omitted).

Several district courts have weighed in on the analysis courts should perform upon a motion to transfer pursuant to Section 1404(a). In Baptist Hospital, Inc. v. CJ Critical Care Transportation System, 2007 U.S. Dist. LEXIS 88529, at *12-13 (N.D. Fla. Nov. 30, 2007), the court provided the following suggested analysis:

> A district court may transfer any case to any other district where the case originally may have been brought. To transfer an action under section 1404(a) the following criteria must be met: (1) the action could have been brought in the transferee court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties. Because federal courts ordinarily accord deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice.

Id.

Similarly, in Sterling v. Provident Life and Accident Insurance Co., the Court explained that "In order to overcome the presumption in favor of plaintiff's choice of forum, the movant must show the balance of the conveniences is strongly in favor of the transfer." 519 F. Supp. 2d 1195, 2006 U.S. Dist. LEXIS 96369, at *15 (M.D. Fla. June 19, 2007) (internal quotations and citations omitted). The

court further explained that when considering a motion to transfer, the Court should consider:

> Plaintiff's initial choice of forum, convenience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory process for witnesses, location of relative documents, financial ability to bear the cost of the change, and all other practical problems that make trial of the case easy, expeditious, and inexpensive.

Id.

### III. Analysis

As a threshold matter, the Court must determine whether the action could have been brought in the District of Colorado. "An action might have been brought in a proposed transferee court if: (1) the court had jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court." Windmere Corp. v. Remington Prods., Inc., 617 F. Supp. 8, 10 (S.D. Fla. 1985)(internal quotations and citations omitted). This Court finds that Suomen's claim could have been brought in the District of Colorado because DISH has its principal place of business there, and the allegedly infringing activity arose there.

### A.   Plaintiff's Choice of Forum

Having determined that Suomen's Complaint could have been filed in the District of Colorado, this Court will now address whether the case should be litigated in the District of Colorado. To do so, the Court will evaluate the seven Sterling factors, including the weight that should be given to Suomen's choice of forum.

Generally, in determining the merits of a § 1404(a) motion to transfer, this Court gives strong consideration to the plaintiff's choice of forum. Specifically, the Eleventh Circuit has noted that "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996)(internal citations omitted). However, "[i]n patent cases, the preferred forum is the defendant's place of business as that usually constitutes the center of gravity of the alleged patent infringement." Proven Winners N. Am., L.L.C. v. Cascade Greenhouse, No. 2-06-CV-428-FTM-29DNF, 2007 U.S. Dist. LEXIS, at *6 (M.D. Fla. June 6, 2007).

It should also be noted that "where a plaintiff has chosen a forum that is not its home forum, only minimal deference is required, and it is considerably easier to

satisfy the burden of showing that other considerations make transfer proper." Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp., 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007). In this case, the Court lends less deference to Suomen's choice of forum because Suomen, a Finnish Corporation with no business operations in Florida, has no connection to the Middle District of Florida.

Furthermore, "[W]here the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." Garay v. BRK Elecs., 755 F. Supp. 1010, 1011 (M.D. Fla. 1991). Here, the Court gives Suomen's choice of forum less weight because the operative facts underlying Suomen's complaint did not occur in the Middle District of Florida. According to the declaration of DISH employee Amy Conley, "DISH has no operations related to its technology anywhere in Florida." (Doc. # 15-1). In addition, EchoStar's Senior Vice President, Jeff McSchooler, declared that "the majority of the decisions regarding the activity at EchoStar's uplink facilities are centered in Colorado." (Doc. # 26-2). Because Suomen is not from the Middle District of Florida and the operative facts did not occur in the Middle District of Florida, the

Court affords minimal deference to Suomen's choice of forum in the Middle District of Florida.

### B. Convenience of Parties and Witnesses

The second factor, the convenience of the parties and witnesses, favors Colorado. The Middle District of Florida "gives great weight to the convenience of the parties and witnesses." Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc., 55 F. Supp. 2d 1347, 1352 (M.D. Fla. 1999). According to Conley, DISH is "headquartered in Colorado and its business is centered there. The majority of its decisions regarding marketing and sales efforts take place in Colorado." (Doc. # 15-1 at ¶ 4). "Nearly all of DISH's developers, sales representatives, software engineers, marketing staff and financial staff, work and live in Colorado." Id. Conley also states that she is "unaware of any witnesses material to this case that are located in the Middle District of Florida." Id. In addition, according to Defendants, witnesses Dan Minnick and Mike Cavanaugh reside in Colorado, and witness Raghu Tarra resides in California. If the employees referenced by Conley were called as witnesses, having them travel to the Middle District of Florida would be less convenient than having them travel to the District of Colorado.

Suomen does not dispute that many key witnesses are located in Colorado. Rather, Suomen raises the fact that two witnesses are located in the Middle District of Florida. First, Suomen points out that it has hired Florida corporation E-Hounds, Inc. as its expert witness and consultant. A number of courts, however, have ruled that the convenience of expert witnesses is entitled to little or no consideration under Section 1404(a). See Silong v. United States, No. 5:05-cv-55-Oc-10GRJ, 2006 U.S. Dist. LEXIS 21367, at *12 (M.D. Fla. Apr. 12, 2006)("it is well settled that the convenience of an expert witness is typically entitled to little, if any weight."); Houston Trial Reports, Inc. v. LRP Publ'ns, Inc., 85 F. Supp. 2d 663, 669 (S.D. Tex. 1999)("The convenience of expert witnesses weighs little in the [Section 1404(a)] analysis.").

Second, Suomen notes that Florida manufacturer Jabil Circuits, Inc. may be called as a witness in this case. (Doc. # 21). Suomen filed a corporate document from EchoStar tending to show that EchoStar, at one point, utilized Jabil Circuits, Inc. to manufacture set-top boxes. By the declaration of its Senior Vice President, George King, EchoStar disputes that it used any Florida

manufacturer (including Jabil Circuits, Inc.) for the set-top boxes in question. (Doc. # 26-1). It is not necessary, on the present motion, to resolve the factual dispute concerning where EchoStar's set-top boxes were manufactured. Even assuming that EchoStar used a Florida manufacturer, the balance of the witnesses in this case are located in or near Colorado. The Court finds that it is more convenient for the party and non-party witnesses in this case to have the matter transferred to the District of Colorado. A majority of the witnesses discussed by the parties either reside in Colorado or are closer to Colorado than Florida.

### C. Sources of Proof

The third factor, relative ease of access to sources of proof, supports transfer to the District of Colorado. "This factor examines the location of sources of documentary proof and other tangible materials, and the ease with which the parties can transport them to trial." Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc., 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010). In patent infringement cases, "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are

kept weighs in favor of transfer to that location." In re Genentech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009)(internal citations omitted).

The documents necessary to try this lawsuit are found in the District of Colorado. According to the Declaration of King, "only EchoStar has all the manufacturing data (including purchase orders and schedules) on its set-top boxes, which is centrally located at EchoStar's headquarters in Colorado; no such data is located in Florida." (Doc. # 26-1). Even the information regarding DISH's Florida customers is kept in Colorado. (Doc. # 15 at 7). Thus, the Court determines that this factor militates in favor of transfer to Colorado.

### D. Judicial Economy and Practicality

Courts often consider such things as the relative interests of the two forum states in the litigation, relative hardship of the parties, and questions of judicial economy. Here, the Court finds that it would be substantially more efficient and more practical to try this case in the District of Colorado. With the greater availability of relevant witnesses and evidence, the District of Colorado is better situated to effectively

resolve the issues in this case without overwhelming disruption to the parties.

Suomen correctly notes that this Court has a strong interest in protecting Florida residents from patent infringement. However, the District of Colorado has an equally strong interest in protecting its residents from patent infringement. Defendants, as movants, bear the burden of persuading this Court that the balance of the conveniences strongly favors transfer to another district. Defendants have met this burden. Thus, Defendants' Motion to Transfer is granted.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant DISH Network L.L.C.'s Motion to Transfer to the District of Colorado Pursuant to 28 U.S.C. § 1404(a) (Doc. # 15) **GRANTED.**

(2) Defendants' Motion to Join (Doc. # 27) is **GRANTED.**

(3) This case is transferred to the United States District Court for the District of Colorado.

-14-

(4) After transfer has been effected, the Clerk shall **CLOSE THE CASE**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida this 8th day of July, 2011.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record